Good morning, Your Honor. David Hoffman on behalf of Appellant Goody Baskets. I'd like to reserve five minutes for rebuttal. I want to take us back for just a moment to philosophy class. Why are we here today? Because you appealed. That's right. That's the end of philosophy class. We're not here to decide that Houdini's mark, Wine Country Gift Baskets, is generic. We're not here to decide that it is descriptive. What we're here is on a preliminary injunction to decide whether or not there's a fair chance that they can prove those things, and we're not striking their mark today, and I think that's very important to understand. The question is, did the district court apply the proper standard? Because here it did not use the sort of the primary preliminary injunction test. It used the four-pronged test with a likelihood of success on the merits. In fact, it found that there wasn't a likelihood of success on the merits, but what the court applied was the other... Did the court find there was not a likelihood of success on the merits? It found that there should... well, I don't know that it said it in those words, but... It didn't say it at all. Okay. I mean, this is the problem with paraphrasing. You know, we're not helped when you take liberties with what actually happened. I didn't see anywhere where the court said there's a likelihood of success on the merits. It doesn't appear here. It was there were some serious questions. It's a balance of hardship test, which is an alternate test of likelihood of success, correct? Okay. I believe it did. And I apologize, Your Honor. I believe it did say somewhere, and I can address this on rebuttal if I find the language, that it wasn't prepared to find a likelihood of success. And I apologize for paraphrasing. You see, we've got to stick with what happened. Okay. So we're looking at the alternative test, which is the balance of hardships tipping strongly in the favor of the plaintiff and a fair chance of success or serious questions interpreted by the case law as a fair chance of success on the merits. With respect to the fair chance, Houdini has to show each predictable element of a trademark. They have to show that the mark is not generic here because we raised a challenge to it and because it's not a registered trademark. And that's the Filipino Yellow Pages case. The purported mark there was Filipino Yellow Pages. Here, the purported mark is one country gift basket. There's no real issue as to whether the mark was generic, is there? I mean, the mark, it was a generic mark. Isn't that correct? So you're talking about the one country gift baskets? Yes. Yes. But there's no issue that it is generic? I didn't think that. I thought the question here was whether there was whether it was descriptive with a secondary meaning. Well, they still. If it was generic, you couldn't copyright it. But if it's descriptive with a secondary meaning, you could. Isn't that. You could have protection. There are both issues here. You have to show that you're not generic and you have to show that when you're descriptive, you have to show secondary meaning. Well, one country gift baskets doesn't tell you what's in the basket. It tells you who is providing the basket. And on the classical test of what being generic and who being descriptive is the description. No. Our position is set forth in the briefs. I mean, we don't know if I'm looking at wine country baskets, whether it's gift baskets, whether it's clothes, whether it's perfume, whether it's food or whether it's wine. All those things are produced in Napa Valley. Right. But, you know, it's a gift basket with one country goods in it. But what goods? It doesn't say what goods it says who's producing it. This outfit called Wine Country Gift Baskets is producing it. But the trademark is asserted with respect to the basket. It's not asserted with respect to specific goods. Right. With the basket. Right. And the basket is a basket that carries because the trademark describes who is putting together the basket. This famous firm, Wine Country Baskets. That only that only you only get there if you look, if you already adopt Wine Country Gift Baskets as being a trademark. That's the only you get to the trademark designation by determining it is not generic. As Judge Thompson said, but it is descriptive and has acquired a secondary meaning. And what's the problem there? Why isn't it not a trademark? It's not a trademark because there are three reasons here that exist. Three same three types of evidence has existed in the Filipino case. The first is the plaintiff itself used the mark in a descriptive or generic sense. First, it adopted original eventually on its trademark, on its alleged trademark. Second is in search engine searches when the description that the defendants provided of their product comes up from their web page. It uses Wine Country Gift Baskets in a list of products. It doesn't use Wine Country Gift Baskets as a trademark there. The third, I'm sorry, the second is that the media and third parties use the trademark or alleged trademark in a generic sense. We have an article on how to buy Wine Country Gift Baskets. It does not attribute Wine Country Gift Baskets to the plaintiff Houdini. It uses it in a generic sense. There are some PR news wires we submitted for products that Sutter Home had that were called Wine Country Gift Baskets. Third, there's no evidence of Houdini going out and enforcing its mark other than this specific case. But in Filipino, obviously, they brought a case to enforce it. There's no evidence of Houdini over 17 years of use trying to show that they have enforced the mark. With respect to and remember, I mean, I think it's very important here to understand the preliminary injunction because they can come forward with other evidence later. What is the standard of review by which we determine whether the trial court erred in issuing a preliminary injunction? We have two standards in this case. The first is on the test. Did the trial court err as a matter of law in applying the test? Because the trial court's determination uses the serious questions wording, which is in the test. But the question is, does it find a fair use? I mean, a fair chance of success in its discussion. The second is, is the evidence that the trial court is relying on, is that sufficient to find a fair chance of success? And that one is, in the sense of whether or not the evidence is evidence that's a question of law, in the sense of whether or not this evidence is enough, there's deference to the trial court. But we have to find clear error, right? Clear error. Well. In order to reverse. In order to reverse on the factual findings, yes. But it's easier because there was no testimony here. It's just it's all on the paper. Kind of an unusual case when you have products of one company on another product's website, photographs. Yes. And we've removed all of those. Everything that the defendants. Reasonably blatant. Reasonably blatant copying. Yes. I don't take away from that. We bought the business. The part that I represent that owns the business now bought the business in the form it was in. It had a number of domain names. Shortly after purchasing the business, we were advised by Houdini that there were items on the website that were copies. And we took those off. Here is. I think it's important. And to some extent, your question, Your Honor, shows me that we may be looked at here somewhat like a cyber pirate. And we're not. We have a number of domain names. We have. I'm not sure the exact number, but there are lists in our papers. There are more than many, more than five. And they all use Wine Country or Wine Country Gift Basket or Gift Basket. They are all directed to improve search engine response. And the way they do that is by using these names in the domain name. Searchers, and in the Ninth Circuit's own case law in the Brookfield case, searchers of the web will often use domain names that they think may result in finding the particular goods, as well as domain names that may result in finding a particular company. We have adopted the strategy of trying to find the particular goods. What does this preliminary injunction do to you? It stops us from using this particular domain name, WineCountryGiftBasket.com, which stops a portion of our business where people would be looking for Wine Country Gift Basket. That domain name cannot show up higher in the rankings. And that's one way that we get seen on the Internet. Now, we didn't present and the district court said we didn't have very good evidence of the harm to us. But there is harm. And I think if we look at the harm to the defendant, to the plaintiffs, Houdini, that's all based on their confusion evidence. And their confusion evidence is triple hearsay. There were calls placed to Houdini's sales representatives or call center. Then there is a supervisor of those call center employees. And then there is a manager. And then there's Mr. McGuire on top of that. Is there a prohibition against using this kind of evidence in this context? Is there a prohibition against using triple hearsay here? No, there is no specific prohibition on that. That's correct. But the problem here is if we're having it, if we have a test and we want to show a fair chance of success, and we're giving this injunction because there's a lot of damage, I think we have to have some clear evidence of what the damage is in triple hearsay. We don't have numbers of how many calls were made. We have evidence that there were 10 million catalogs sent out. But we don't have evidence of how many people made these calls. It could have been three people. We don't have evidence. Even more important is we don't have evidence that these callers were confused by our particular domain name. Can't you take depositions of these people and have them ready for the hearing on permanent injunction? We can, yes. But what's happening here is we've got an injunction against us saying there's a fair chance of success without even any link of that evidence on damage, on the harm to the defendants, to this particular domain name that we use. That link is missing. And when you look at also their evidence of likelihood of confusion, because I think that's the other place where the action is in this case, their evidence is they've used for 17 years and that they sent out a lot of catalogs, truckloads or trainloads of catalogs over that time. But there's no evidence of exclusive use. In fact, the district court noted that there were evidence of another user we provided as well as many other users, a company in Canada that's on the Internet with the same domain name as the defendants, except it's .net. If we agree with you, tell us what's going to happen next. We write an opinion in your favor. Where do you go from here in this case? In the case as a whole, well, we get to if we want to turn back on that domain name and we litigate the case. There may be evidence that these callers were not confused. We would go into depositions to see whether these callers were confused by our domain name or by something else. Because there are a lot of third-party users of the words here collectively and three-quarters of them together. How does it hurt you to go to trial to have the preliminary injunctions standing against you? Well, again, it hurts us by not being able to use this domain name in our business. I can't put a dollar amount on it, but the plaintiffs haven't put a dollar amount. They're the ones that are supposed to show the harm, and they haven't put a dollar amount on that harm. They haven't put an amount on their sales when we get to secondary evidence, and they haven't put an amount on their catalogs with respect to Wine Country gift basket used as a trademark on the cover. They've just said they've sent out 10 million catalogs. This is just a question. This was entered, I guess, on May 10, 2005, and you've been damaged by not being able to use this since May 10. We've got a trial coming up. Why wouldn't you just not appeal it and go immediately to trial if you wanted to get this off your back? This is the strategy we chose. We just felt that it was appealable. Yeah, but it was appealable. But, I mean, if your ultimate goal is to win at a trial and you've got a good case, it seems to me that you've just lost almost a year appealing it when you could have had the trial maybe over with by now. Well, you might be right. Next time around I might think of it differently. But here, can I say, we had the right to appeal. We thought it would be faster, a faster process, not that I'm denigrating the court at all. But it's worked out not to be as fast. I'm just curious as to the judgment, listening to you, why you didn't say, well, we've got to go to trial and win this thing so we can start running our business, instead of, well, let's go up and muck around with a notoriously slow ninth circuit for a year. Well, we also thought that the case would move forward. And I guess we haven't really pushed it, but that was in part because we thought this appeal might be decided faster. Take a look at the stats. If you can get anything from us shorter than a year, it's not bad. We're working on it here in this case. Okay. Now, and lastly, with respect to secondary evidence, as I was saying, the sales, normally the classic secondary evidence is sales in dollars and advertising in dollars. And we don't have that here. We have some hinting that they're going to come up with some good evidence later on, but there isn't any specific evidence. And I don't think you can find a fair chance of success unless you've got some showing that they exclusively use the mark. And without the dollar amounts, and without evidence that they've been stopping others from using the marks, when you have other people that use very similar and the same domain name, then to me that's not a fair chance of success. And I think that that's the only reasonable conclusion here, is there's not a fair chance of success rather than looking at us as being a junior user and not having that much damage to us. I think we've got to have both sides of the equation. Do you wish to address the defense of fair use? Yes. Thank you. On fair use, the Supreme Court said in the KP permanent makeup case, and I think we also refer to it as lasting impression, that you can have consumer confusion and still have fair use. Now, fair use, the key to fair use is, are you using the phrase or the word in a descriptive sense? We are. That's what our evidence shows. It's consistent with the Brookfield case that we use that domain name in the same way we use our other domain names, wine country basket, wine baskets, wine and cheese basket, the same way to improve our rankings on the searches, the Google searches, the Yahoo searches, because when a customer or a potential customer searches on those words, if those are in your domain name, that improves your chances. Now, I also did a Yahoo search where I transposed the wording. Instead of going wine, country, gift, baskets, I did country, wine and basket gift to see if the search engine was just plugging through the same name in the order that I entered it or if it was really looking at the terms. Is this what you're describing now in the record? Yes. And that search came out with wine, country, gift, baskets in a lot of the hits. And that shows the descriptive sense of the words. Now, here we have as a. You want to save some time. Yes. Sit down now. OK. You want to save the time you have remaining. Yes. I just want to. I just want 10 seconds to finish up here. We have confusion evidence that's very vague. Triple hearsay. No specific link to us. That evidence can't overcome the fair use here. May it please the Court. Edward Schwartz of Christie, Parker and Hale on behalf of Appley Houdini, Inc. First issue, the issue of protectability of the mark. They've only appealed on two issues. They did not appeal with regard to likelihood of confusion or the district court's finding of the balance of the hardships shifting strongly in my client's favor. They appealed with regard to protectability of the mark. So the first issue is, did we show, because it was our burden to show that it was not generic. The district court clearly understood the nature of the products that we sell. We attached to the complaint or exhibit showing our baskets and some of the products. At the hearing, which was in February last year, I gave the court a copy of the Valentine's Day catalog. They saw all the types of products. And the court is correct. There are a variety of products in there. It can be spa products like perfume. There can be a whole variety of food products. Some of the baskets, but much less than one-fifth, contain wine. But there are a wide variety of products. At the hearing, the district court asked me, first thing off, is this mark protectable? I said, it's not generic. And we're saying it's suggested. Who said it's not generic? Excuse me? You said something about not generic. Yes. Wine country gift baskets is not generic. Our court said, we went into a little discussion of that. And I said that if you do find it's generic, then we're done here. But the court understood that it wasn't generic. And if there was any question about the court's finding, he said, and this is on page 6 of the supplemental appendix. The supplemental appendix, which I submitted, is the transcript from the hearing. It's telling that the appellant didn't include the transcript. On page 6, the district court says, okay, it's not generic. You look at this and you don't know what products it is. If there's any question about the district court not understanding what generic means, look at the preliminary injunction that is appealed from in this case. That's page 225 in the record appendix. The preliminary injunction, what he enjoined them from, and the way he phrased it, I wrote it initially as submitted, but he edited the order that I submitted. And what was enjoined was from, A, using the trademark wine country gift basket, or any more confusingly similar thereto, including, but not limited to, wine country gift baskets in any advertising website or any other purpose. And then the district court wrote in, it's in his handwriting, relating to the sale of wine, spa, and or food gift baskets. You may not know what's in a wine country gift basket, but you know what's in those generic terms. A wine gift basket has wine. A spa gift basket has spa-type products. A food gift basket has food. Those are generic. The district court knew what generic meant. But he called our mark, wine country gift basket, a trademark. Trademark, by definition, is a term that designates the source of a product. 15 U.S.C. Section 1127. In the Bennett order that the judge entered, I didn't find anything about generic. He talks about descriptive. And maybe when he says they're descriptive, he's thereby saying they're not generic. That's correct, Your Honor. They're descriptive. Right. That's what your point is. Yes. If he had found that they were generic, that's the end of the case. Yeah. But when he goes into the discussion of descriptive, that's what he means. We move further on the spectrum of trademarks. And he says there's really a serious question here as to whether this mark is descriptive with a secondary meaning, but the balance of hardships tips strongly in your favor. And when you have serious questions and balance of hardship tipping strongly in your favor, then he's going to issue the injunction. Is that correct? He did say that, but there's more to it. There is this continuum on the standard for a preliminary injunction. On one side is you have a strong likelihood, you've proven a strong likelihood of success on the merits, and then there's a presumption of irreparable harm. Right. He didn't find that. He didn't find that at all. He did not find that. Okay. So you move further along the spectrum. And what he did find was that we had proven that there was a likelihood of confusion. That goes a long way to success on the merits. Well, that gets you the hardship, doesn't it? Well, yes. Yes. But if he had found, I guess the issue that the appellant raises is, is the mark protectable with regard to descriptive and secondary meaning? I have two ways to respond to that. What the district court cited was Judge Kaczynski's decision in Japan Telecom, and he enumerates four factors for proof of secondary meaning for descriptive marks. They are whether consumers associate the mark with the product, with the producer, the degree of advertising, the length of use of the mark, and whether the use has been exclusive. The district court found we've done a lot of advertising. That favors us. He said you've used it for 17 years. That favors you. The district court said the other two factors, you don't win on exclusivity because there is evidence of this. And he also said, and I didn't pick up on it, that we didn't prevail, convince him on the other factor, but he didn't name the other factor. I've looked at it. Since that, whether consumers associate the mark with the producer. Our evidence of actual confusion demonstrates that consumers do view this mark as designating us. Appellant's lawyer said, well, you know, they didn't have a whole lot of evidence of actual confusion. This is a preliminary injunction. In most cases, you're very lucky to get any instances of actual confusion. And certainly not at the beginning of the case. What happened in this case, they bought, the evidence was that they bought this domain name in November of 2004. They start using it. It's the Christmas season, the heavy season. All of a sudden, we start getting telephone calls saying, you know, the product doesn't look the way it did last year. I don't like it. Or where's our product? We ordered it off the website. But it wasn't us. It was them. And we, in further question, we determined they hadn't ordered it from us. They ordered it from the website that where it was wine country gift basket singular, they took off the S. Now, we think we made a fair showing of secondary meaning, that it required a distinctiveness, that we had, and the district court said, you've raised serious issues with regard to this. And combine that with the finding of likelihood of confusion and the balance of hardships, you met your burden. And that proceeding, and it's in the record, they, and Helen's counsel this morning said, you know, they didn't have a registration. Just so the court knows, we have a motion pending now before the district court to amend the pleadings, because we now have three federal registrations for wine country relating to gift baskets. The Patent and Trademark Office found that there was a distinctive mark. It's registered under Section 2E of the statute. We did not have to find it. Is that in the record as of now? No, it is not. They just issued this past month. Okay. With regard to the fair use issue, I would submit that lasting impressions doesn't affect the substance of how this district, how this circuit views fair use. What lasting impressions decision was, said, was that consumer confusion is paramount here. And there's a balancing between, in the trademark law, between protecting consumers from confusion and letting people use marks in a descriptive sense. And they said that a plaintiff, the trademark owner, must prove as a preliminary matter a likelihood of confusion. If you do that, then the burden shifts to the defendant to show that it was a fair use. What I submit is the way that this circuit has dealt with these issues before is the proper way. Trademark owner proves a likelihood of confusion. And if you prove substantial, and substantial means different things depending on the stage of things, substantial actual confusion, that's the end of the story. If there's actual confusion out there, consumers being confused, it means they are looking at this mark, these terms, as a trademark. That's the real test. You can have all the lawyer's talk you want, but if consumers are confused, they're viewing it as a trademark. And if it's a trademark by statute, it's not a fair use. The statute says fair use is use of a term other than as a trademark. If there's substantial actual confusion, I submit that should be the end of the fair use defense. It does undercut it. That's how the district court read the lasting impressions case, and it said it in a footnote. The existence of actual confusion undercuts the fair use defense. The Supreme Court said that the existence, if there is a fair use, the existence of some confusion may not undercut it. But that's, I submit, they're talking about a possibility of likelihood of confusion. You haven't proven that consumers really view it as a trademark. But when you have actual confusion, that changes the equation. In this particular case, it doesn't matter, though. You know, if you get, we've proven a likelihood of confusion, they haven't appealed that. They don't mention it either. We've shown actual confusion. But then you get to the fair use. Is there use of fair use? This circuit has defined what's a fair use. Now, admittedly, there's been a distinction between classic fair use and nominative fair use. I think in the New Kids on the Block case made it pretty clear that there really isn't a difference in determining whether something is fair use. And, in fact, that is what it says in the circuit's standard jury instructions. As the note after that says, these apply to both. And what it says in determining if something is a fair use is three steps. First step, did they use this term in a purely descriptive way and it couldn't have been described equally as well in a different way? Second step is, did they only use so much of the plaintiff's trademark necessary to describe the goods? And the third is, what did they do to prevent confusion? Examining those three, is there another way of describing their goods? Yeah. They have other domain names. They have wine and cheese gift basket. They have winebasket.com. They have a lot of them. Appellant's counsel didn't know, but there certainly in the record were a lot of them. They submitted a declaration in the record about all these. Those are generic. Wine and cheese gift basket, you know what's in there. Winebasket, you know what's in there. Wine country gift basket, you don't know what's in there. They used it for another purpose. That's part three. Did they use only so much of our mark to describe what's in there, the second test? No. They could have said, wine gift basket, and we wouldn't have had a problem if they wanted to tell people they had wine in there. The third step, did they do anything to avoid confusion? Absolutely not. What they did is they bought a website, a domain name, in November of 2004. We didn't know about them until we found out the instance of actual confusion started coming in. We contacted them in late December and moved on it. During that time period, they pretend we didn't know who put those photographs up there. But what they did know and had to have known, people were ordering goods off their website that they weren't offering for sale because they weren't available anymore. They were pictures from Costco from our goods from the year before. Somebody put them on their website. They were getting orders for it, and that can't be a fair use. They were using it, at the very least, as a bait and switch, which, although not part of this appeal, is part of this case. It's the basis for our unfair competition claim. In sum, their use just can't be fair, not under these circumstances. They adopted the mark with full knowledge of our client's business. As in the record, we're the second largest producer of gift baskets in the country. Everyone knows about us. Excuse me. Judge Trott was asking earlier about the trial date and all of that. Do you have a trial date in this case? No, we do not. How soon would you normally get to trial? In the Central District, is that where you are? Yes, we are in the Central District. From the time of filing to trial usually is about a year. About a year. About a year. Yes, the court did ask about that. I've taken written discovery in this case. We have not taken depositions as yet. The appellant has not taken any discovery. Is there any likelihood of success in mediation or settlement? We have already gone to the magistrate, who acted as a mediator, and that did not settle the case. Are there any further questions? We have our own mediation commissioner. Do you think that would do any good at this level, or do you just want a decision? You know, many of us have gone to ADR, and you come in with different clients, and you say they're not even talking to each other, and you've been surprised with wonderful success. So I can't say that it would not be helpful. Thank you. Two minutes. I just want to address a couple of things with regard to the Supreme Court lasting impression case. The Supreme Court said that fair use is an affirmative defense. It's not a factor or something that's sort of factored into likelihood of confusion or goes away if you find likelihood of confusion. It's an affirmative defense that's a separate issue. If you were to win on the fair use, there should be no preliminary injunction. Isn't that correct? That would be correct, yes. Now, if they later came forward with a lot of evidence, more specific evidence of confusion at trial, they may or may not win on that issue. My experience, I can't speak for sure on the Central District's trial time, but my experience has been 18 to 20 months. How about this picture? When you found out that the pictures had been copyrighted, I guess, you stopped using them. That's correct. They're icons because they look like a basket, and then you blow it up, and it looks a little bit bigger. But having used that in connection with the mark, it tends to cut against fair use, it seems to me. Is that correct? I couldn't tell you for sure. I think there's probably some element of bad faith in fair use, but I don't see this as bad faith either. It doesn't determine the fair use issue. I don't think it's determinative here, especially since we took it off. We took these things off, and we had just taken over the business. And I can't tell you, I'd have to search your record, but I couldn't tell you if there was evidence that the prior owner obtained Houdini materials or baskets and produced them. OK. And the last is just to, with respect to the honey brown ale case, that's a Miller case. In that case, you can't tell if honey is the color or the taste. But that mark was, that purported mark was unenforceable. And the shredded wheat case, 17 years of exclusive use, but that was found generic. Thank you very much.
judges: Thompson, Trott, Bea